1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  RADUGA U.S.A. CORP.; NIKOLAI
    ROMANOVSKIY; and VLADLENA
12  YAKOVLEVA,

13                                        Plaintiffs,

        vs.
14

15  UNITED STATES DEPARTMENT OF
    STATE, et. al.,
16

17                                        Defendants.

CASE NO. 04cv996 BTM (BLM)

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS [Doc. # 83]
AND DENYING PLAINTIFFS'
MOTION FOR JUDGMENT ON THE
RECORD OR, ALTERNATIVELY,
FOR A BRIEFING SCHEDULE [Doc.
# 79]**

18        In August 2000, Plaintiff Raduga USA Corp. ("Raduga") filed an I-140 Immigration

19  Petition for alien worker on behalf of its president and sole shareholder, Plaintiff Nikolai

20  Romanovskiy, and on behalf of Plaintiff Vladlena Yakoleva as Romanovskiy's dependent.

21  In April 2001, following the approval of the I-140 petition by the INS, the individual Plaintiffs

22  applied for immigrant visas at the U.S. Embassy in Moscow.  On May 14, 2004, unable to

23  obtain any decision on these applications, Plaintiffs brought an action seeking an order to

24  compel the U.S. consulate in Moscow to adjudicate the visa applications of Romanovskiy and

25  Yakovleva.  By order dated May 23, 2005, the Court agreed with Plaintiffs and issued a writ

26  of mandamus against the U.S. consular officials, ordering them to render a decision on the

27  visa applications.

28        The Acting Under Secretary of Homeland Security for Border and Transportation

Security, through the Deputy Assistant Secretary for Visa Services of the Department of

State, rendered a decision on July 21, 2005.  Pursuant to these instructions, the embassy denied the visa applications.    By order entered March 3, 2006, the Court granted the Plaintiffs' motions for leave to file a supplemental complaint and to set aside the judgment pursuant to Fed. R. Civ. Pro. 60(b).  See Docket # 73.  Plaintiffs subsequently filed a first amended complaint, seeking an order (1) setting aside the unfavorable visa application decisions and (2) ordering that they be approved, or alternatively, reviewed in good faith. See Docket # 77.  Plaintiffs contend the further relief was necessary because the ultimate decision to deny the visa was "facially illegitimate."

Currently before the Court are several motions.  Plaintiffs have moved for judgment based on the record, or, alternatively, for a briefing schedule on the issue of materiality. Defendants have moved to dismiss, or alternatively, for summary judgment.  For the reasons discussed below, the Defendants' motion to dismiss is **GRANTED**, and the Plaintiffs' motion is **DENIED**.

## I.    BACKGROUND

Plaintiffs Romanovskiy and Yakovleva were married in 1996.  See Defs.' Ex. 34.  In April 1996, Yakovleva entered the United States.  On November 9, 1996, she called the police to report a domestic incident with her husband.  The police apparently investigated and arrested Romanovskiy.  He was fingerprinted and booked on charges of domestic violence pursuant to Cal. Penal Code § 273.5(a).  See, Ex. 96.  Romanovskiy was never charged or prosecuted for this crime.  Of note, the San Diego Police Department apparently spelled the arrestee's name "Romanouski."  See e.g., Ex. 58.

In May 1997, the U.S. Embassy in Moscow received a "poison pen" letter which stated that Romanovskiy had been arrested on domestic violence charges and released on $15,000 bail.  See Ex. 3. It also made allegations that Raduga was essentially a bogus operation and that Yakovleva had illegally used her ex-husband's social security number to obtain a credit card for Romanosvkiy.   The letter was signed and included the writer's work and home telephone numbers, although this information has been redacted in the copies filed with the

04CV996

1    Court.

2         In August, 2000, Plaintiff Raduga U.S.A. Corp. filed immigrant visa petitions with the

3    INS to sponsor the individual Plaintiffs' applications to become lawful permanent residents.

4    Ex. 4-6.  On November 30, 2000, the INS approved the immigrant visa petitions.  Following

5    this appoval, the individual Plaintiffs applied to the Embassy for an immigrant visa, and an

6    interview was scheduled.  Question #34 of the visa application asked Romanovskiy (as the

7    applicant) whether he had, in relevant part, "even been taken into custody . . . ."  Exs. 12-13.

8    Romanovskiy responded "no."  In June 2001, the Moscow Embassy's Fraud Prevention Unit

9    began its inquiry (presumably based on information provided in the poison pen letter) into the

10   alleged 1996 arrest.  In January 2002, it issued a letter stating that it found no record related

11   to this arrest.  The letter acknowledged, however, that it was "possible that [the individual

12   Plaintiffs] were arrested using aliases, different derivations of their names, or different dates

13   of birth."  Ex. 16.

14        The investigation continued in 2001-02, with the Embassy apparently continuing its

15   attempt to verify the allegations in the letter.  After the Embassy learned that Romanovskiy

16   had a record in the National Crime Interstate Identification Index ("NCIII"), it obtained his

17   fingerprint records and submitted them to the FBI with a request for an extract of

18   Romanovskiy's NCIII record.   In November 2002, it received an extract reporting

19   Romanovskiy's 1996 arrest.  No disposition of the case was reported.  Exs. 23-24.

20        At the request of the Embassy for court or police records, Romanovskiy submitted a

21   certification from the San Diego Municipal Court and Superior Court that no criminal records

22   existed under the names "Romanovsky" or "Romanovskiy."  Exs. 26-29.  In conjunction with

23   a second interview held February 4, 2003, Romanovskiy again filed a visa application,

24   answering "no" to a question which asked "Have you ever been charged, arrested, or

25   convicted of any offense or crime?"  Ex. 33.  Both parties agree that at some point in 2003

26   the records concerning the arrest were purged and therefore became unavailable for review.

27   Bettwy Decl. ¶¶ 4-5; White Decl. ¶ 3.

28

1    In May 2004, Plaintiffs filed their initial complaint, against the Department of Homeland
2    Security ("DHS") and the State Department, seeking a writ of mandamus ordering the
3    Moscow Embassy to adjudicate the pending immigrant visa applications.  DHS researched
4    the 1996 arrest, learning that Romanovskiy had been arrested and booked at the San Diego
5    County jail and that he had not been prosecuted for lack of sufficient evidence. Around the
6    same time, in early 2005, the Embassy conducted a third interview.  Romanovskiy continued
7    to deny having been arrested, and again answered "no" to a question relating to an arrest
8    record.  Ex.  44, 46.  On May 23, 2005, the Court issued the mandamus and ordered that a
9    decision on the applications be made within 60 days.

10    At a fourth interview, held on June 24, 2005, Romanovskiy explained that he did not
11    consider the 1996 incident to be an arrest.  Ex. 66.  He instead stated that he considered the
12    incident to have been a detention.  Ex. 67.  On July 22, 2005, pursuant to the Secretary of
13    State's Direction, the Embassy denied the individual Plaintiffs' visa applications.  The letter
14    to Plaintiffs' counsel explained that the applications were being refused pursuant to §
15    212(a)(6)(C)(i) of the INA because Romanovskiy had attempted to procure a visa through
16    fraud or willful misrepresentation of a material fact.  Ex. 93-94.  It concluded by explaining
17    that he had not met his burden of proving that he is not inadmissible under § 212(a)(6)(C)
18    of the INA.  In a subsequent letter, the Department of Homeland Security explained that Mr.
19    Romanovskiy's "repeated misrepresentations regarding the 1996 arrest for a crime involving
20    moral turpitude can reasonably be seen as among other things, having been intended to shut
21    off a line of inquiry that was relevant to the question to whether he was admissible . . . ."  Ex.
22    95.

23    Plaintiffs have since filed the supplemental complaint, alleging that the Defendants'
24    rejection of the application was not in good faith.

25

26    **II.    DISCUSSION**

27    The Plaintiffs argue in their motion that the decision was facially illegitimate because
28    the misrepresentation was neither material nor fraudulent or willful when it was made.

4

1    Defendants argue that the doctrine of consular non-reviewability precludes judicial review

2    and moves to dismiss the complaint.  Alternatively, they argue that Plaintiffs have failed to

3    satisfy their burden of admissibility.   They argue that Plaintiff Romanovskiy's

4    misrepresentations were in fact material because they prevented the Embassy from

5    obtaining and confronting him with evidence of the crime and to obtain his admission or

6    denial.  For the reasons discussed below, the Court finds that the doctrine of consular non-

7    reviewability precludes this court's review of a discretionary decision to deny a visa.

8    Defendants' motion to dismiss is therefore **GRANTED**.  The Plaintiffs' motion for judgment

9    based on the record is **DENIED**.

10       The Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1101 et seq., provides

11    that aliens may not be admitted to the United States except as provided by its terms.

12    Consular officers are charged with adjudicating visa applications from aliens, see 8 U.S.C.

13    §§ 1104(a) and 1201, with provisions for advisory opinions and directed denials by the

14    Secretary of DHS and the Secretary of State.  Relevant here, is 6 U.S.C. § 236(b) which

15    provides:

16

17       [T]he Secretary [of DHS] shall be vested exclusively with all authorities to issue
         regulations with respect to, administer, and enforce the provisions of [the INA],
         and of all other immigration and nationality laws, relating to the functions of
18       consular officers of the United States in connection with the granting or refusal
         of visas, and shall have the authority to refuse visas in accordance with law
19       and to develop programs of homeland security training for consular officers (in
         addition to consular training provided by the Secretary of State), which
20       authorities shall be exercised through the Secretary of State, except that the
         Secretary [of DHS] shall not have authority to alter or reverse the decision of
21       a consular officer to refuse a visa to an alien . . ..

22       The Ninth Circuit has held that "it is without power to substitute its judgment for that

23    of a Consul, acting pursuant to valid regulations promulgated by the Secretary, on the issue

24    of whether a visa should be granted or denied."  Li Hing of Hong Kong v. Levin, 800 F.2d

25    970, 971 (9th Cir. 1986) (quoting Ventura-Escamilla v. INS, 647 F.2d 28 (9th Cir. 1980)).  In

26    Li Hing, the Ninth Circuit upheld the dismissal of an action seeking an order compelling the

27    United States Counsel to issue a visa to the plaintiff.  800 F.2d at 970.  The Court explained

28    that "it has consistently held that the consular official's decision to issue or withhold a visa

1   is not subject to either administrative or judicial review." Id. at 971 (citing cases).  Quoting

2   the Supreme Court decision in Kleindienst v. Mandel, 408 U.S. 753, 766 (1972), it explained

3   "[t]he power of Congress to exclude aliens altogether from the United States, or to prescribe

4   the terms and conditions upon which they may come into this country, and to have its

5   declared policy in that regard enforced exclusively through executive officers, without judicial

6   intervention, is settled by our previous adjudications."  Li Hing, 800 F.2d at 971.

7          The Li Hing case controls here.  There, as here, a local corporation filed a visa

8   application on behalf of one of its employees.  Similarly, the INS approved the visa petition

9   and forwarded it to the embassy for consideration.  The application was then denied.  The

10   main distinction between the cases is that in Li Hing the embassy in Hong Kong denied the

11   application itself, while in the present scenario, the Moscow Embassy did so at the direction

12   of the Secretary of State.  The Secretary of State did so upon the request of the Secretary

13   of DHS and lawfully pursuant to 6 U.S.C. § 236(b), which vests in the Secretary of DHS "the

14   authority to refuse visas in accordance with law . . ., which authorit[y] shall be exercised

15   through the Secretary of State . . .."

16          Plaintiffs' attempts to argue that Li Hing and related case law do not apply fall short.

17   First, its reliance on a footnote in Patel v. Reno, 134 F.3d 929, 932 n.1 (9th Cir. 1997) is

18   misplaced.  The language cited is dicta.  See Noh v. INS, 248 F.3d 938, 942 (9th Cir. 2001)

19   (describing Patel footnote as dicta).  There the holding concerned a failure to adjudicate, not

20   the denial of a visa application.  Patel ordered the district court to issue an order compelling

21   the United States consulate to adjudicate the Plaintiffs' visa applications.  Id. at 933.  While

22   it held that the court had jurisdiction to consider whether the consulate has the authority to

23   suspend the visa application, it did not review a counsel's discretionary decision.  The

24   language in the footnote does state that "judicial review exists when the government has

25   denied a visa if the government did not act 'on the basis of a facially legitimate and bona fide

26   reason' . . . and may also exist under circumstances pursuant to the Administrative

27   Procedure Act."  Id. at 932 n.1 (citing Kleindienst, 408 U.S. at 753 for facially legitimate

28   proposition) (emphasis added).  However, the decision did not actually review a consulate

1   decision.  For these reasons, the footnote in <u>Patel</u> does not negate the holding in <u>Li Hing</u>.

2         The absence of a facially legitimate or bona fide reason for denying a visa application

3   is an exception to the general rule of nonreviewability.  <u>See</u> <u>Kleindienst</u>, 408 U.S. at 770 ("We

4   hold that when the Executive exercises [the power to exclude an alien] negatively on the

5   basis of a facially legitimate and bona fide reason, the court will [not] look behind the exercise

6   of that discretion . . . .").  Here, however, the government provided a facially legitimate reason.

7   It is undisputed that Romanovskiy failed to disclose his arrest (or detention).  His post-hoc

8   rationalizations for these misrepresentations, namely that he was not technically "arrested"

9   under the California Penal Code or that he did not personally consider the incident to have

10  been an arrest, <u>see</u>  Ex. 66 ("I don't consider this incident as an arrest"), do not change the

11  fact that he repeatedly did not disclose that he had been booked on a charge of domestic

12  violence.   The translation of his Russian language visa application (provided by the

13  Defendants and not disputed by the Plaintiffs) shows that Romanovskiy was asked, *inter alia*,

14  whether he had even been "taken into custody."  Ex. 13.  The answer to this question is

15  undisputedly "yes."  The decision here was therefore not facially illegitimate as Plaintiffs

16  contend.

17        Plaintiffs also argue that the doctrine of consular nonreviewability has been implicitly

18  overruled by <u>Rasul v. Bush</u>, 542 U.S. 466 (2004).  <u>Rasul</u> is easily distinguishable because

19  it considered whether "the habeas statute confers a right to judicial review of the legality of

20  Executive detention of aliens in a territory over which the United States exercises plenary

21  and exclusive jurisdiction, but not 'ultimate sovereignty.'"  <u>Id.</u> at 475.  In considering the legal

22  challenges brought by detainees held at Guantanamo, Cuba, <u>Rasul</u> did not consider a

23  consulate decision related to visas.  It therefore does not implicitly overrule or even modify

24  the Ninth Circuit decision in <u>Li Hing</u>.

25        Plaintiffs' reliance on <u>American Academy of Religion v. Chertoff</u>, No. 06 Civ 588

26  (PAC), 2006 WL 1751254 (S.D.N.Y. June 23, 2006), a recent unpublished district court case,

27  is similarly unavailing.  There, while the Court rejected the government's arguments that

28  consular nonreviewability applied, it held merely that the government must "justify the

exclusion of an alien when the First Amendment rights of American citizens are implicated." Id. at * 12.  Therefore, even if the case were controlling, it would clearly be distinguishable because the Plaintiffs claims' here do not implicate the First Amendment rights of American citizens.

Finally, Plaintiffs argue that there can be review of the visa denial decision under the Administrative Procedure Act.  The Court disagrees.  The APA states explicitly that it does not apply when "statutes preclude judicial review."  5 U.S.C. § 701(a)(1).  Courts have long found that they may properly "infer that the immigration laws preclude judicial review of consular decisions." Saavedra Bruno v. Albright, 197 F.3d 1153, 1162 (D.C. Cir. 1999).  This understanding is what allows the long-standing rule of consular nonreviewability to remain viable in the face of the broad scope of review called for by the APA.  While the decision to deny Plaintiffs' visa applications was made by the DHS in this instance and not consular officials, the Court finds this distinction inadequate to support a finding of reviewability.  The Court recognizes that the doctrine of consular nonreviewability dates back over 100 years. See, e.g., Fong Yue Ting v. U.S., 149 U.S. 698, 713-14 (1893) ("[t]he power of Congress . . . to expel, like the power to exclude aliens . . . may be exercised entirely through executive officers").  The Court finds that Congress, cognizant of this long history, did not intend to abandon this governing principle when it passed the Homeland Security Act in 2002 and transferred authority over consular operations to the new office of Secretary of DHS.  To effect such a drastic jurisprudential change requires a clear statement from Congress, which is not provided in this case.  In fact, Congress has indicated just the opposite.  In enacting the Homeland Security Act, it specifically stated: "Nothing in this section shall be construed to create or authorize a private right of action to challenge a decision of a consular officer or other United States official or employee to grant or deny a visa."  6 U.S.C. § 236(f). Accordingly, the APA cannot be invoked to compel review here.

//

//

//

1         The Court is without jurisdiction to review the decision to deny the individual Plaintiffs

2   a visa.  The decision was not facially illegitimate.  It therefore need not reach the issue of

3   whether Romanovskiy's misrepresentations were material or willful.  Defendants' motion to

4   dismiss is therefore **GRANTED**.

5

6   **III.      CONCLUSION**

7         For the reasons discussed, Defendants' motion to dismiss is **GRANTED**.  Plaintiffs'

8   motion for judgment based on the record, or alternatively for a briefing schedule, is **DENIED**.

9   The Clerk shall enter a final judgment dismissing the supplemental complaint.

10

11   **IT IS SO ORDERED.**

12

13

14   DATED:  December 5, 2006

15

16   Hon. Barry Ted Moskowitz
    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

9

04CV996